IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CENTRAL LABORERS' PENSION FUND, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO. 08-3065 |
| ALLIANCE COMMERCIAL CONCRETE, INC., ALLIANCE CONCRETE CONSTRUCTION, LLC, ALLIANCE FOUNDATION, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court is the Plaintiffs' Motion for summary judgment.

I. INTRODUCTION

This action is brought pursuant to the Labor Management Relations Act, as amended, 29 U.S.C. § 185(a), and the Employee Retirement Security Act of 1974 (ERISA), as amended 29 U.S.C. § 1001 et seq. PlaintiffS Central Laborers' Pension, Welfare, and Annuity Funds, et al.

seek the entry of summary judgment against Defendant Alliance Concrete Construction, L.L.C. ("ACCL"), for two counts of the Plaintiffs' Complaint. Count II of the Complaint sought a payroll audit of ACCL and, if delinquent contributions were identified, payment of those contributions. Count V sought judgment against ACCL as a successor to Alliance Foundations, Inc. ("AFI"), for contributions owed by AFI. On May 31, 2011, the Court entered judgment against AFI in the amount of $370,028.19 for past due fringe benefit contributions, liquidated damages, and audit costs.

The Plaintiffs now seek judgment against ACCL in the amount of $10,094.50 for audit liabilities, liquidated damages, and audit costs for the audit completed of ACCL and $370,028.19 for past due fringe benefit contributions, liquidated damages, and audit costs resulting from an audit of AFI based on the theory of successor liability.

II. FACTUAL BACKGROUND[1]

---

[1] These facts are taken from the Plaintiffs' alleged undisputed material facts. As the Plaintiffs assert in their reply brief, ACCL's response is not consistent with the local rules. By failing to properly respond to the Plaintiffs' numbered facts, ACCL has admitted those facts. See CDIL-LR 7.1(D)(2)(b)(6).

2

The Plaintiffs are employee benefit funds administered pursuant to the terms and provisions of certain Agreements and Declarations of Trust and are required to be maintained in accordance with the provisions of the Labor Management Relations Act of 1947 and the ERISA. ACCL is a concrete construction contractor and thus is an Employer engaged in an industry within the meaning of ERISA, 29 U.S.C. § 1002(5), (11), (12), and (14). The Defendant has employed individuals who are members of Local Union No. 309 Laborers' International Union of North America and said individuals are participants in the Plaintiffs' employee benefit funds.

ACCL filed its Articles of Incorporation on March 28, 2005. ACCL is owned by Allied Investment Group, L.L.C., which was incorporated on March 11, 2005. At the time Allied Investment was incorporated, Michael Wardlow owned one-third of the company. Wardlow now owns 50% of Allied Investment Group.

AFI was a concrete construction contractor which was incorporated in Iowa on January 22, 2002. AFI was owned by Jack Laud and Mike Wardlow. Laud and Wardlow served as officers of AFI but only Wardlow

was a director of AFI. AFI ceased operations in March of 2005 and was involuntarily dissolved by the Iowa Secretary of State on August 7, 2006.

Alliance Commercial Concrete, Inc. (ACCI) was a concrete construction contractor which was incorporated in Iowa on December 12, 2002. ACCI was owned by Jack Laud and Mike Wardlow and both served as officers and directors of the company. ACCI stopped operating in March of 2005.

Mike Wardlow is currently a general manager of ACCL and has supervised its operations since its incorporation. ACCL received equipment, vehicles and tools of the trade from AFI and ACCI. At the time of its incorporation, ACCL, through its members or managers, knew that the Plaintiffs had made a demand to ACCI for payments of delinquent contributions owed to the Plaintiffs. Although ACCL has not signed a labor agreement, it has submitted report forms and made contributions to the Plaintiffs since it began operations in April of 2005.

ACCL has agreed to two payroll compliance examinations requested by the Plaintiffs since April of 2005. The first exam of ACCL covered the

4

period of October of 2005 through December 31, 2006. The report for the first examination was issued on March 6, 2007, and found contributions owed of $725.95. The second report for ACCL covered the period of October of 2005 through December of 2009. The second report was issued on April 23, 2010, and found $10,094.50 was due for employer contributions to the Plaintiffs. The Plaintiffs forwarded that report to ACCL's attorney on May 19, 2010, with a demand for payment.

ACCL presented several challenges to the report. However, the Plaintiffs requested more information on some of the challenges and the ACCL never responded to the request. During the period that ACCI was in operation, it had signed several labor agreements including a highway construction agreement on May 30, 2003, and a building construction agreement on June 24, 2003. ACCI had also agreed to a payroll compliance examination requested by the Plaintiffs. On November 14, 2005, a report was issued for contributions offered by ACCI. That report showed contributions due of $8,288.60. ACCI paid the amounts listed in the report. While conducting the examination of ACCL, the field examiners

5

identified several laborers who were performing residential work; however, the examiners were refused access to any other records regarding residential work.

### III. DISCUSSION

#### A. Legal standard

The Plaintiffs claim they are entitled to summary judgment. Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011).

#### B. Audit report liability for ACCL

The Plaintiffs claim that ACCL is liable for $10,094.50 for the contributions owed as identified in the report issued on April 23, 2010. They assert that although ACCL has never formally signed a collective bargaining agreement, it is a successor company to ACCI which had two agreements in effect with the Laborers' and which required contributions

6

to the Plaintiff's funds.  Moreover, ACCL has adopted the applicable agreements pursuant to its course of conduct.  Specifically, the Plaintiffs state that ACCL has submitted contribution reports to the Plaintiffs since April of 2005 through November of 2011.  Moreover, it agreed to a payroll compliance examination before this lawsuit and it cooperated with the examination requested as part of this lawsuit.  Additionally, ACCL submitted several challenges to the report thereby waiving any arguments that Plaintiffs lacked the authority to conduct the audit or seek the contributions identified in the report.

The Plaintiffs further assert that ACCL is a successor to ACCI.  Mike Wardlow was an owner of ACCI and became a 50% owner of ACCL.  ACCL took over ACCI's Federal Employer Identification Number.  It also took possession of ACCI's equipment, tools, and vehicles.  Some of the same employees worked at both entities.  Until March of 2005, contribution reports were submitted in ACCI's name; subsequently, they were submitted in ACCL's name.  Citing Line Construction Benefit Fund v. Allied Electrical Contractors, Inc., 591 F.3d 576, 578 (2010), the

7

Plaintiffs note that an entity can by course of conduct demonstrate its assent to be bound by the applicable collective bargaining agreements. Conduct that manifests such agreement may include "the payment of union wages, the remission of union dues, the payment of fringe benefit contributions, the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction, such as that created by grievance procedures." Id. at 580 (citations omitted).

The Plaintiffs claim that in this case, Mike Wardlow testified that he hired laborers out of the local hall and paid the prevailing wage and fringe benefits for these laborers. Moreover, the contribution reports submitted by ACCL for the period of April of 2005 through November of 2010 show not only the payment of fringe benefits but the calculation of dues payment for remittance to Laborers' Local 309. Additionally, ACCL showed assent by agreeing to a payroll compliance examination for the period of October of 2005 through December of 2006.

The Plaintiffs contend that there is no factual dispute that ACCL is liable to the Plaintiffs for the contributions identified in the report issued

8

on April 23, 2010. The Plaintiffs seek judgment in the amount of $10,094.50.

ACCL's response consists of a number of statements and legal conclusions that are not supported by references to the record. There is a reference to Mike Wardlow's affidavit and other exhibits attached to the memorandum. However, the response does not include any legal argument, as is required by the local rules. See CDIL-LR 7.1(D)(2)(c).

As the Plaintiffs contend, a party cannot defeat summary judgment by making a number of unsupported allegations and attaching an affidavit and other exhibits to the response. In Waldridge v. American Hoechst Corp., 24 F.3d 918 (7th Cir. 1994), the United States Court of Appeals for the Seventh Circuit rejected a plaintiff's argument that there was sufficient evidence in the record for the court to determine that summary judgment was not warranted, notwithstanding the plaintiff's failure to comply with the local rules. See id. at 923. The court declined to sift through the exhibits attached to the plaintiff's motion, stating that if a party failed to properly support its pleading, "the court should not have to proceed

further, regardless of how readily it might be able to distill the relevant information from the record on its own." Id.

Because ACCL has failed to properly respond to the Plaintiffs' factual allegations or legal argument, the Court concludes that summary judgment is warranted on the Plaintiff's claim based on audit report liability.

C. Successor liability of ACCL

Count V alleged that ACCL is the successor company to AFI and is therefore liable for the audit liabilities, liquidated damages, and audit costs owed by AFI. The Plaintiffs seek the entry of summary judgment. A successor company is liable for the fringe benefit contributions of its predecessor if "(1) there is sufficient continuity between the two companies and (2) the successor company had notice of the predecessor's liability." Moriarty v. Svec, 164 F.3d 323, 327 (7th Cir. 1998). Factors which may establish a continuity of operations include use of the same management, supervisory personnel and employees; the production of the same products; the fulfillment of previous commitments or obligations undertaken by the predecessor; and use of the same equipment. See Upholsters' Inter. Union

Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1329 (7th Cir. 1990).

The Plaintiffs allege that the several factors support their contention that ACCL is AFI's successor. Mike Wardlow owned a 50% share in AFI and currently owns a 50% share in the parent company which owns ACCL. Both ACCL and AFI are in the same business of concrete construction. Moreover, Wardlow has managed or supervised the daily operations of both entities. Some of the same employees or supervisors have worked at both ACCL and AFI. The Plaintiffs further state that ACCL also received tools of the trade, vehicles, and other equipment from AFI. They assert that Wardlow testified the primary reason for the transition from AFI to ACCL was because AFI (and ACCI) were unable to pay their debts to the lending institutions. ACCL assumed the bank notes initially executed by AFI.

The Plaintiffs further allege that ACCL had notice of its predecessor's fringe benefit liability. Mike Wardlow has been employed as an owner and manager of the predecessor and successor companies. Central Laborers became aware of AFI through payroll records provided by an employee (and

a member of Laborers' Local 309), which demonstrated that AFI would also be required to pay fringe benefits.  The employee alleged that he frequently worked on commercial projects, for which AFI would be required to pay fringe benefit payments.  The payroll records show the employee also worked for ACCI.  However, no contributions were ever paid on his behalf for this work.  Moreover, there is no evidence that fringe benefit payments were paid for other ACCI employees who sometimes worked for AFI.  The Plaintiffs contend that AFI was used to avoid paying fringe benefits required by the agreements executed by ACCI.  The Plaintiffs contend that Wardlow would obviously have known this.

The Plaintiffs further assert that, although Wardlow may not have known the extent of AFI's liabilities at the time of the transition to ACCL, AFI never contested the complaint against it.  AFI had the right to contest the lawsuit and the results of the payroll audit.  Neither AFI nor Wardlow contested the lawsuit.

Like the allegations in support of the summary judgment motion as to Count I, the Plaintiffs' assertions with respect to successor liability have

not been properly disputed. Therefore, the Court concludes that Plaintiffs have shown that ACCL was a continuation of operations of AFI and ACCL had notice of the liabilities of AFI. Accordingly, ACCL shall be held liable for contributions, audit costs, and liquidated damages assessed in the default judgment against AFI.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for summary judgment against ACCL as to Counts II and V will be Allowed. Judgment will be entered in the amount of $10,094.50, for audit liabilities, liquidated damages, and audit costs for the audit completed of ACCL, pursuant to Count II. On Count V, judgment will be entered against ACCL in the amount of $370,028.19 on the theory of successor liability, for past due fringe benefit contributions, liquidated damages, and audit costs resulting from an audit of AFI.

Ergo, the Plaintiffs' Motion for summary judgment against Defendant Alliance Concrete Construction, L.L.C. as to Counts II and V [d/e 48] is ALLOWED.

Judgment will be entered on Count II in the amount of $10,094.50 on Count II and $370,028.19 on Count V.

The Court previously Directed that Judgment be entered in favor of the Plaintiffs as to Defendant Alliance Foundation, Inc., in the amount of $370,028.19. On July 14, 2011, the Court further Directed that Defendants Alliance Foundation, Inc. and Alliance Commercial Concrete, Inc. be Ordered to pay $19,219.63 in attorneys' fees and costs. The Plaintiffs are Directed to submit an updated request for fees and costs within fourteen (14) days of the entry of this Order.

ENTER: December 19, 2011

       FOR THE COURT:

                                                s/Richard Mills
                                                United States District Judge