IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CENTRAL LABORERS' PENSION FUND, <u>et</u> <u>al</u>., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO. 08-3065 |
| ALLIANCE COMMERCIAL CONCRETE, INC., ALLIANCE CONCRETE CONSTRUCTION, LLC, ALLIANCE FOUNDATION, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

The record establishes that service by the Plaintiffs on Valley Bank was valid and the Court had jurisdiction to grant the Motion for Turnover.

The Plaintiffs' action and claim were filed prior to the FDIC's appointment as Receiver.

The FDIC did not seek or obtain a stay upon its appointment.

Therefore, the most reasonable interpretation of the applicable statute is that Plaintiffs may maintain and prosecute their action.

The Court declines to Vacate either Order as requested by the FDIC.

I.

On December 22, 2011, the Court entered Judgment in favor of Plaintiffs Central Laborers' Pension Fund, et al. and against Defendant Alliance Concrete Construction, L.L.C., in the amount of $10,094.50, as to Count II, and $370,028.19, as to Count V. On June 11, 2014, the Plaintiffs filed a Combined Motion and Memorandum for a Rule to Show Cause, to Avoid Fraudulent Conveyances and to Turn Over Assets. See Doc. No. 90. On July 10, 2014, the Court Allowed the Motion and Ordered Michael Wardlow, as manager of Defendant Alliance Concrete Construction, L.L.C., to show cause why he should not be held in contempt for his failure to comply with Citations to Discover Assets and, further, why he should not be held personally liable for the value of transferred assets, for making non-exempt transfers in violation of the Citation to Discover Assets. See Doc. No. 92. The matter was set for a Hearing, which has been continued a number of times.

II.

In its Opinion and Order, the Court further stated that the Motion to Avoid the Alleged Fraudulent Transfers of Ten Vehicles against non-party Xtreme Caution, Inc. would be considered at the Hearing. The Court also Allowed the Motion for Turn Over and Ordered the turnover to the Plaintiffs of the proceeds of the sale of the ten vehicles sold by Valley Bank, to be applied by the Plaintiffs toward the outstanding judgments. On October 11, 2014, Interested Party Xtreme Caution, Inc. filed a Response to the Motion for Order to Show Cause, Avoid Fraudulent Conveyances and Turn Over Assets. See Doc. No. 112.

Since the July 10, 2014 Opinion and Order, there have been a number of filings by parties, interested parties and/or non-parties. The Motion to Vacate the Order on Motion for Order to Show Cause filed by Interested Party Michael Wardlow [d/e 97] was Denied. See Doc. No. 104. The Plaintiffs filed a Reply [d/e 106] requesting that Michael Wardlow be held in contempt and Wardlow filed a Sur-reply [d/e 107] asserting he should not be held in contempt or found liable.

On September 10, 2014, the Plaintiffs filed a Motion to Substitute

Party, requesting that Valley Bank be replaced as an interested party by Great Southern Bank. See Doc. No. 108. In a Text Order entered on September 19, 2014, the Court Allowed the Motion and Great Southern Bank was added as an interested party.

On October 13, 2014, the Plaintiff filed a Motion to Supplement Affidavit of Service on Valley Bank. See Doc. No. 113. In the motion, the Plaintiffs noted they had previously filed an affidavit of service on Valley Bank on June 23, 2014. See Doc. No. 91. That affidavit was completed by the Scott County Sheriff's Office and showed service on Valley Bank on June 18, 2014 at a LeClaire, Iowa Valley Bank location. The Plaintiffs filed the Motion to Supplement, upon notice that attorneys for Great Southern Bank will contest the propriety of service on the LeClaire, Iowa location because that location was sold by Valley Bank in April of 2014. Therefore, the Plaintiffs note they also served Valley Bank on June 17, 2014 at its Moline, Illinois office. Service there was effectuated by the Rock Island County Sheriff's Office. The Plaintiffs have attached the affidavit of service and seek leave to file Exhibit 1 as a supplemental affidavit in order to avoid

any dispute regarding jurisdiction over Valley Bank, and now substituted third party Great Southern Bank, in these supplementary proceedings. See Doc. No. 113-1.

On October 13, 2014, Counsel entered an appearance on behalf of the Federal Deposit Insurance Corporation, as Receiver for Valley Bank (FDIC). See Doc. No. 114. The FDIC was appointed as Receiver pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1811 et seq. on June 20, 2014.

On October 13, 2014, the FDIC moved to vacate the July 10, 2014 Order as it pertains to Valley Bank. See Doc. No. 115. The FDIC contends the Court lacked jurisdiction to grant the Plaintiffs' Motion for Turnover as to Valley Bank because the Plaintiffs never served Valley Bank with the Motion. Because the FDIC was appointed as Receiver for Valley Bank on June 20, 2014, moreover, the Court did not have any jurisdiction against Valley Bank pursuant to 12 U.S.C. § 1821(d)(13)(D). Accordingly, the FDIC claims the July 10, 2014 Order is void. On October 15, 2014, the Plaintiffs filed a Response to the FDIC's Motion. See Doc. No. 117.

In their Response, the Plaintiffs allege that because they filed a timely claim and also filed their Motion for Turnover before the FDIC's appointment as a receiver for Valley Bank, the Court retains jurisdiction over their Motion for Turnover.

On October 13, 2014, the FDIC also moved to vacate the September 19, 2014 Order substituting Great Southern Bank for Valley Bank, on the basis that Valley Bank was never properly served with the Plaintiffs' Motion for Turnover. See Doc. No. 116. The FDIC alleges that, pursuant to 12 U.S.C. § 1821(c) and (d), it is the proper party to substitute as Valley Bank's successor by operation of law. On October 15, 2014, the Plaintiffs filed their response. See Doc. No. 118. The Plaintiffs allege that the FDIC's motion consists of unsupported allegations, undeveloped arguments and does not cite to pertinent authority and, therefore, it is without merit.

On December 12, 2014, the FDIC filed a Motion for leave to file Reply Briefs as to both of its Motions, see Doc. No. 120, a request which the Plaintiffs opposed due to an alleged lack of diligence by the FDIC. See Doc. No. 121. Great Southern Bank also filed a Memorandum in support

6

of the FDIC's Motion for leave to file Reply Briefs. See Doc. No. 122. In its memorandum, Great Southern Bank claims it is a protected purchaser of the assets of a failed bank pursuant to 12 U.S.C. § 1823(e) and, therefore, the Plaintiffs are barred from asserting any cause of action which would diminish or defeat that interest with respect to the assets it claims to have acquired from the FDIC on June 20, 2014. In a Text Order on December 17, 2014, the Court noted the untimeliness of the FDIC's request but allowed the motion and the Reply Briefs were docketed. See Doc. Nos. 123 & 124. On January 16, 2015, the Plaintiffs' Sur-replies were filed. See Doc. Nos. 126 & 127.

No party or non-party has responded to the Plaintiffs' Motion to Supplement Affidavit of Service. The Motion [Doc. No. 113] will be ALLOWED. Even assuming the service on June 18, 2014 at a LeClaire, Iowa Valley Bank location was not valid because that location had been sold two months earlier, the Affidavit attached to the Plaintiffs' Motion establishes that Plaintiffs also served Valley Bank on June 17, 2014 at its Moline, Illinois office.

Accordingly, the Court did not lack jurisdiction over Valley Bank and does not now lack jurisdiction over its successor, Great Southern Bank.

III.

One of the FDIC's arguments as to why the July 10, 2014 Opinion must be vacated is that, pursuant to Rule 60(b), the Court did not have jurisdiction to grant the Plaintiffs' Motion for Turnover as to Valley Bank because the Plaintiffs never properly served Valley Bank. Having determined that service was proper, the Court concludes that the FDIC is entitled to no relief on that basis.

The Court will now consider whether the Opinion must be vacated for the second reason articulated by the FDIC. The FDIC contends that because the FDIC was appointed Receiver for Valley Bank on June 20, 2014, the Court did not have jurisdiction over any claims against Valley Bank pursuant to 12 U.S.C. § 1821(d)(13)(D), and the July 10, 2014 Order is therefore void.

Section 1821(d) addresses the powers and duties of the FDIC as a conservator or receiver and §1821(d)(13)(D) pertains specifically to a

8

limitation on judicial review and provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over - -
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). The subsection otherwise provides that there is no prejudice to certain other actions, stating, "Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). This action and claim was filed prior to the appointment of the receiver.

Paragraph 12 addresses the suspension of legal actions and provides:

> (A) In general
> After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed- -
>     (i) 45 days, in the case of a conservator; and
>     (ii) 90 days, in the case of any receiver,

> in any judicial action or proceeding to which such institution is or becomes a party.
>
> (B) Grant of stay by all courts required
> Upon receipt of a request by any conservator or receiver pursuant to subparagraph (A) for a stay of any judicial action or proceeding in any court with jurisdiction of such action or proceeding, the court shall grant such stay as to all parties.

12 U.S.C. § 1821(d)(12).

The language of § 1821(d)(13)(D) appears at first to deprive this Court of jurisdiction based on the FDIC's appointment of receiver. However, the text of the statute also provides that the FDIC's appointment as receiver does not affect the Court's jurisdiction if, as in this case, the claim was filed prior to the FDIC's appointment. The Court is not persuaded by the FDIC's reliance on IndyMac Bank, F.S.B. v. MacPherson, 672 F. Supp.2d 313, 316-17 (E.D. N.Y. 2009), which is inconsistent with the text of the statute.

The text of section 1821(d)(12) provides that the FDIC could have sought and obtained a stay of 90 days in this action upon its appointment as receiver. The FDIC did not request such a stay.

Although the United States Court of Appeals for the Seventh Circuit

10

has not addressed the issue, other courts of appeal have observed that Congress intended to allow claimants a choice in how to proceed subject to the FDIC's right to a congressional stay. In Whatley v. Resolution Trust Corp., 32 F.3d 905 (5th Cir. 1994), the Fifth Circuit stated:

> This circuit, and the others addressing the issue, have interpreted these and other paragraphs [footnote omitted] of subsection 1821(d) to mean that a separate scheme exists for the disposition of lawsuits filed pre-receivership. [footnote omitted]. Those claims, based on valid federal jurisdiction when filed, may be affected only through the stay provision detailed in paragraph (12)(A)(ii). This legislatively-created framework strikes a fair balance between the goals of efficiency and expediency underlying FIRREA and the interests of creditors who, having invoked the proper procedures for protecting their rights, have expended time, money, and energy in properly asserting their claims.

Id. at 908. In this case, it is undisputed the Plaintiffs filed their claim pre-receivership. As noted, the FDIC did not request a stay so paragraph (d)(12)(A)(ii) has no application.

The Eleventh Circuit discussed the potential reasoning for the lack of an automatic stay provision and examined the importance of requiring the FDIC to request a stay:

> There are two possible explanations for the absence of an

11

> automatic stay provision in FIRREA: either Congress intended for the judicial and administrative processes to run concurrently; or it intended to give the receiver the discretion of deciding whether to require the claimant to exhaust its administrative remedies or to allow the suit to proceed judicially. The first explanation is inconsistent with FIRREA's aim of the "expeditious[ ] and fair[ ]" resolution of claims against failed financial institutions in federal receivership and its concern for conserving judicial resources. See H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 419 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 215. [footnote omitted] The second explanation is supported both by the legislative history and the language of the statute. The drafters of FIRREA explained that the purpose of "the stay [is to] give[ ] the [receiver] a chance to analyze pending matters and [to] decide how best to proceed." H.R.Rep. No. 54(I), at 331, 1989 U.S.C.C.A.N., at 127 (emphasis added). Section 1821(d)(3)(A), which sets out the receiver's authority to determine claims administratively, does not require the receiver to subject all claimants to the administrative process. Instead, it is permissive, providing that the RTC " may, as receiver, determine claims in accordance with the requirements of this subsection [1821(d) ]." 12 U.S.C. § 1821(d)(3)(A) (emphasis added). [footnote omitted] We conclude that Congress intended for the receiver to decide whether to "proceed administratively based on the claimant's complaint or any substitute or supplemental filing it may request, or forego the privilege of requesting a stay and thus proceed judicially."

Damiano v. F.D.I.C., 104 F.3d 328, 334 (11th Cir. 1997) (citing Whatley, 32 F.3d at 908). The Eleventh Circuit has interpreted the statute in a manner consistent with its text: to require a receiver to move for a stay

12

within 90 days after its appointment:

> Thus, the RTC must satisfy two conditions to require the plaintiff in a pre-receivership lawsuit to exhaust its administrative remedies before continuing the action: (1) The RTC must "insist on the use of its administrative processes," by staying the action and informing the plaintiff that it is doing so pending exhaustion of the administrative remedies, [footnote omitted] and (2) it must do so in a timely fashion, that is, within the ninety-day period specified in § 1821(d)(12).

Id. at 335.

Although the Seventh Circuit has not specifically addressed the issue of jurisdiction, it has noted that other courts have maintained jurisdiction of pre-receivership claims:

> The Appellants have not asserted that they were exempt from the administrative claims process because they filed the initial complaint before InBank failed, although the FDIC argued that FIRREA's administrative exhaustion requirement applies to pre-receivership claims in its brief. While there is no Seventh Circuit precedent on this issue, other circuits have interpreted FIRREA as allowing courts to maintain jurisdiction over pre-receivership claims and as requiring such claims to go through the administrative claims process through a provision mandating that courts grant requests for stays made by the receiver.

Farnik v. F.D.I.C., 707 F.3d 717, 722 n.2 (7th Cir. 2013) (emphasis added) (citations omitted).

The Plaintiffs' action was filed before the FDIC was appointed as receiver. Pursuant to § 1821(d)(5)(F)(ii), the Plaintiffs may continue the action subject to the discretionary stay provision of paragraph 12. Because the FDIC did not request a stay, the Court concludes that Plaintiffs may maintain and prosecute their claim in this Court.

Accordingly, the FDIC's Motion to Vacate the July 10, 2014 Opinion and Order will be DENIED.

IV.

The FDIC has also moved to vacate the September 19, 2014 Text Order allowing the Plaintiffs' Motion to Substitute Great Southern Bank as an interested party in place of Valley Bank.

The FDIC alleges that because the Plaintiffs' Motion for Turnover was a claim against Valley Bank, it became a claim against the FDIC, as the Receiver, pursuant to the Financial Institutions Reform and Recovery Act of 1989. As a Receiver, the FDIC is a successor to Valley Bank by operation of law, and succeeds to:

> all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder,

14

> depositor, officer, or director of such institution with respect to the institution and the assets of the institution.

12 U.S.C. § 1821(d)(2)(A)(i). Consequently, the FDIC claims it holds title to Valley Bank's assets, including those that Plaintiffs are pursuing in this proceeding. Therefore, the FDIC should be substituted as the proper party.

In its Sur-reply, the Plaintiffs noted that in their three motions filed on June 11, 2014, the Plaintiffs alleged that: (1) Michael Wardlow allowed Valley Bank to place liens on vehicles to which the Plaintiffs had a superior right; (2) Valley Bank then transferred these vehicles to Xtreme Caution with the Bank holding liens in its favor; and (3) Xtreme Caution took possession of the vehicles by virtue of executing a promissory note with Valley Bank.

Based on those allegations, the Plaintiffs state that Great Southern Bank has the assignments over the notes executed by Xtreme Caution. The Plaintiffs further allege that although the FDIC asserts it holds title to Valley Bank assets, an obligation to pay the Plaintiffs would be a liability related to loans administered by Valley Bank and now Great Southern Bank. They assert that because Great Southern Bank has a significant

15

interest in this case (as is evident by its filing a Memorandum in support of the FDIC's Motion for Leave to file a Reply), it is Great Southern Bank, not the FDIC, that is the necessary party to these post-judgment proceedings.

The Court agrees that Great Southern Bank has a strong interest relating to this litigation.

For the reasons discussed in connection with the FDIC's other motion, the Plaintiffs are not precluded from pursuing a claim through the courts based on the procedural posture of this case.

The Court further notes that the FDIC appears to have maintained inconsistent positions regarding its involvement in this action since becoming the receiver for Valley Bank. On June 11, 2014, the Plaintiffs filed their Motions as to Michael Wardlow, Valley Bank and Xtreme Caution. The FDIC became the receiver on June 20, 2014. According to Exhibit 1 to the Plaintiff's Sur-reply, the FDIC had notice of these proceedings by July 16, 2014 when Valley Bank's counsel referred the Plaintiffs' counsel to the FDIC regarding the July 10, 2014 Order. It

appears that two FDIC attorneys were copied with that email.

On August 15, 2014, Great Southern Bank entered its appearance as Valley Bank's assignee. See Doc. No. 105. On September 10, 2014, based on Valley Bank's entry of appearance, the Plaintiffs moved to substitute Great Southern Bank for Valley Bank. Neither Great Southern Bank nor the FDIC responded to the Plaintiffs' Motion to Substitute Great Southern.

Additionally, more than two weeks after Great Southern Bank entered an appearance, on September 26, 2014, the FDIC took the position it was not involved in these proceedings. According to Exhibit 2 to the Plaintiffs' Sur-reply, in response to emails from counsel for Valley Bank and others, C. Travis Maxwell, Counsel in the Litigation Section of the FDIC, stated via email: "The FDIC is not a party to this case. Do not include the FDIC on the circulation or service list for this case." Mr. Maxwell went on to identify counsel for Great Southern because, presumably, the FDIC believed that Great Southern Bank had a significant interest in the proceedings.

It appears that, at some point between September 26, 2014 and

17

October 13, 2014, when the FDIC filed its Motion to Vacate the Order on the Motion to Substitute Party, the FDIC changed its position and decided that it was a party to this case.

Regardless of the reasons for the FDIC's shift in positions, the Court finds no basis to depart from its Order on September 19, 2014 that Great Southern Bank be substituted for Valley Bank.

<u>Ergo</u>, the Plaintiffs' Motion to Supplement the Affidavit of Service [d/e 113] is ALLOWED.

The Motion of the Federal Deposit Insurance Corporation, as Receiver for Valley Bank, to Vacate the Order entered on July 10, 2014 [d/e 115] is DENIED.

The Motion of the Federal Deposit Insurance Corporation, as Receiver for Valley Bank, to Vacate the Order entered on September 19, 2014 and its Motion to Substitute Party [d/e 116] is DENIED.

The Show Cause Hearing remains scheduled for April 7, 2015 at 2:00 p.m.

IT IS SO ORDERED.

ENTER: March 31, 2015

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge