E-FILED
Tuesday, 20 December, 2016  03:28:31 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CENTRAL LABORERS' PENSION      )
FUND, <u>et al.</u>,                          )
                                               )
        Plaintiffs,                      )
                                               )
        v.                                    )          NO. 08-3065
                                               )
ALLIANCE COMMERCIAL          )
CONCRETE, INC., ALLIANCE      )
CONCRETE CONSTRUCTION,   )
LLC, ALLIANCE FOUNDATION, )
INC.,                                         )
                                               )
        Defendants.                     )

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

On December 22, 2011, the Court entered Judgment in favor of

Plaintiffs Central Laborers' Pension Fund, et al. and against Defendant

Alliance Concrete Construction, L.L.C., in the amount of $10,094.50, as

to Count II, and $370,028.19, as to Count V.

On June 11, 2014, the Plaintiffs filed a Combined Motion and

Memorandum for a Rule to Show Cause, to Avoid Fraudulent Conveyances

and to Turn Over Assets.  See Doc. No. 90.  On July 10, 2014, the Court Allowed the Motion and Ordered Michael Wardlow, as manager of Defendant Alliance Concrete Construction, L.L.C., to show cause why he should not be held in contempt  for his failure to comply with Citations to Discover Assets and, further, why he should not be held personally liable for the value of transferred assets, for making non-exempt transfers in violation of the Citation to Discover Assets.  See Doc. No. 92.

Since the July 10, 2014 Opinion and Order, there have been a number of filings by parties, interested parties and/or non-parties.

Pending before the Court: (1) Plaintiffs' Motion for Turnover against the FDIC [Doc. No. 132-2]; (2) Plaintiffs' Motion for Order to Show Cause against Great Southern Bank [Doc. No. 137] and (3) Plaintiffs' Motion to Dismiss the FDIC's Counter-Petition for Failure to State a Claim for Declaratory Relief [Doc. No. 156].  The Court heard oral argument on these motions.

I.

In its July 10, 2014 Opinion and Order, the Court further stated that

2

the Motion to Avoid the Alleged Fraudulent Transfers of Ten Vehicles against non-party Xtreme Caution, Inc. would be considered at the Show Cause Hearing.  The Court also Allowed the Motion for Turnover and Ordered the turnover to the Plaintiffs of the proceeds of the sale of the ten vehicles sold by Valley Bank, to be applied by the Plaintiffs toward the outstanding judgments.  On October 11, 2014, Interested Party Xtreme Caution, Inc. filed a Response to the Motion for Order to Show Cause, Avoid Fraudulent Conveyances and Turn Over Assets.  See Doc. No. 112.

On September 10, 2014, the Plaintiffs filed a Motion to Substitute Party, requesting that Valley Bank be replaced as an interested party by Great Southern Bank.  See Doc. No. 108.  In a Text Order entered on September 19, 2014, the Court Allowed the Motion and Great Southern Bank was added as an interested party.

On October 13, 2014, Counsel entered an appearance on behalf of the Federal Deposit Insurance Corporation, as Receiver for Valley Bank (FDIC).  See Doc. No. 114.  The FDIC accepted its appointment as Receiver pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1811

et seq., on June 20, 2014.  See Doc. No. 115-3.

On October 13, 2014, the FDIC moved to vacate the July 10, 2014 Order as it pertains to Valley Bank.  See Doc. No. 115.  The FDIC contended the Court lacked jurisdiction to grant the Plaintiffs' Motion for Turnover as to Valley Bank because the Plaintiffs never served Valley Bank with the Motion.  Because the FDIC was appointed as Receiver for Valley Bank on June 20, 2014, moreover, the Court did not have any jurisdiction against Valley Bank pursuant to 12 U.S.C. § 1821(d)(13)(D).[1] Accordingly, the FDIC claimed the July 10, 2014 Order was void.

On October 15, 2014, the Plaintiffs filed a Response to the FDIC's Motion.  See Doc. No. 117.  In their Response, the Plaintiffs alleged that

---

[1]That subsection includes a limitation on judicial review and provides:
Except as otherwise provided in this subsection, no court shall have jurisdiction over–
 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such a receiver; or
 (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.
12 U.S.C. § 1821(d)(13)(D).

because they filed a timely claim and also filed their Motion for Turnover before the FDIC's appointment as a receiver for Valley Bank, the Court retained jurisdiction over their Motion for Turnover.  On April 1, 2015, the Court Denied the FDIC's Motion to Vacate the Order entered on July 10, 2014.  See Doc. No. 128.

On October 13, 2014, the FDIC also moved to vacate the September 19, 2014 Order substituting Great Southern Bank for Valley Bank, on the basis that Valley Bank was never properly served with the Plaintiffs' Motion for Turnover.  See Doc. No. 116.  The FDIC alleged that, pursuant to 12 U.S.C. § 1821(c) and (d), it is the proper party to substitute as Valley Bank's successor by operation of law.[2]  On April 1, 2015, the Court Denied the Motion to Vacate the Order entered on September 19, 2014, concluding that Great Southern Bank is the proper party.  See Doc. No.

---

[2]Section 1821(c) addresses the appointment of the FDIC as receiver and states in part: "The Corporation shall be appointed receiver, and shall accept such appointment, whenever a receiver is appointed for the purpose of liquidation or winding up the affairs of an insured Federal depository institution by the appropriate Federal Banking agency, notwithstanding any other provision of Federal law."  12 U.S.C. § 1821(c)(2)(A)(ii).  Section 1821(d) addresses the power and duties of the FDIC as a receiver.

128.

Both Great Southern Bank and the FDIC filed Motions to Reconsider the April 1, 2015 Order on the Motion to Vacate and Substitute Party. See Doc. Nos. 129 & 130. In an Order entered on June 19, 2015, the Court Denied both Motions to Reconsider. See Doc. No. 136. The Court also Allowed the Plaintiffs' Motion for Leave to File a Motion for Turnover against the FDIC, and Ordered that the Motion for Turnover be docketed. See id.

On June 22, 2015, the Plaintiffs filed a Motion for Order to Show Cause against Great Southern Bank. See Doc. No. 137. The basis of the motion is that since the September 19, 2014, Great Southern Bank has failed to turn over the $106,000 which its predecessor, Valley Bank, was Ordered to pay on July 10, 2014.

On July 9, 2015, Great Southern Bank filed a cross-claim for declaratory relief and supplementary counter-petition for declaratory relief against the FDIC. See Doc. No. 142. On July 14, 2015, the FDIC, as receiver for Valley Bank, filed an answer and counter-petition for

declaratory relief.  See Doc. No. 143.

## II.

On July 9, 2015, Great Southern Bank also filed a Response to the Plaintiffs' Motion for Order to Show Cause, contending that the FDIC, as Valley Bank's Receiver, has satisfied Valley Bank's obligations under the July 10, 2014 Turnover Order, thus rendering the Plaintiffs' Show Cause Motion moot.   See Doc. No. 141.  On July 7, 2015, the FDIC issued a notice reversing its initial denial of the Plaintiffs' administrative claim by sending an acknowledgment-of-claim letter to the Plaintiffs in the amount of $101,212.[3]  According to Great Southern Bank, that acknowledgment and the entry of a receiver's certificate disposes of any obligation of the Receivership estate of Valley Bank to the Plaintiffs in connection with their turnover motion.   Great Southern Bank also asserts that the Turnover Order directed to Valley Bank does not constitute an "unambiguous

---

[3]The notice states in part, "The FDIC as Receiver for Valley Bank (Illinois) has reviewed your general unsecured claim ("claim") against the receivership and has determined to allow your claim in part and disallow the remainder of your claim."  Doc. No. 141-5.  Specifically, the Plaintiffs' total claim amount was $106,000.00, $101,212.00 of which was allowed and $4,788.00 was disallowed.  See id.

7

command" to Great Southern to turn over the proceeds.  Additionally, Valley Bank did not have "full knowledge" of the outstanding judgment when Defendant Alliance sold the cars to Xtreme.  Great Southern Bank further contends that it assumed no liability to the Plaintiffs.  Any such liability was retained by the FDIC.  See id.

The Plaintiffs filed a Reply to Great Southern Bank's Response.  See Doc. No. 150.  They allege the FDIC's allowance of their claim has not satisfied the obligation under the July 10, 2014 Turnover Over because the Plaintiffs have not been paid any monies pursuant to that Order. Additionally, Great Southern Bank's and the FDIC's argument is not persuasive unless the FDIC had the authority and jurisdiction to issue the allowance outside the statutory 180 day period.  "Before the end of the 180 day period . . . the FDIC shall determine whether to allow or disallow the claim."  12 U.S.C. § 1821(d)(5)(A)(i).  Although the 180-day period may be extended by written agreement, see § 1821(d)(5)(A)(ii), the Plaintiffs and the FDIC did not agree in writing to extend the 180-day period.

The Plaintiffs filed their claim on September 23, 2014, and the FDIC

8

purported to allow it on July 7, 2015–well over 180 days later.  However, the FDIC initially denied the Plaintiffs' claim on March 13, 2015–which was within the 180-day period–without a specific explanation.  There is also no explanation why the FDIC subsequently changed its determination in order to purportedly allow the Plaintiffs' claim.  The Plaintiffs suggest that the apparent motive is to "ambush" their rights to proceed in this action.

The FDIC alleges there is nothing in the statute which prohibits the FDIC from allowing a claim after 180 days.  It simply must make a determination within that period or the claim is deemed to have been denied.  Counsel stated the reason for this requirement is that Congress wanted to ensure that the FDIC did not simply "sit on a claim."  A main objective of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") is to "facilitate the expeditious and efficient resolution of claims against failed banks."  See Miller v. FDIC, 738 F.3d 836, 840 (7th Cir. 2013).  "To ensure that claims are resolved quickly and efficiently, FIRREA establishes strict administrative prerequisites and deadlines that claimants must follow to lodge their claims and challenge any

denials." Id.

The FDIC contends that the 180-day requirement does not prevent the FDIC from revisiting the issue. It simply must make a determination within that period. The failure to do so means that the claimant make seek administrative review in federal court. See Miller, 738 F.3d at 844-45 (citing 12 U.S.C. § 1821(d)(6)(A)).

The Plaintiffs allege that, pursuant to 12 U.S.C. § 1821(d)(12)(A)(ii), the FDIC could have requested a stay of this litigation in order to proceed exclusively through the administrative claims process.[4] Because the FDIC (and Great Southern Bank) instead proceeded to litigate the issues and denied the Plaintiffs' administrative claim within the statutorily required 180-day period, the Plaintiffs believe the FDIC's unexplained reversal of that decision outside the 180-day period is an attempt to dispose of the case in its favor without a hearing on the Plaintiffs' motion. The Plaintiffs contend that, because the FDIC and Great Southern Bank have not

---

[4]This subsection authorizes the receiver upon appointment to request a stay for no more than "90 days, in the case of any receiver, in any judicial action or proceeding to which such institution is or becomes a party." 12 U.S.C. § 1821(d)(12)(A)(ii).

provided a legal basis for "allowing" the claim, their actions have served only to waste time and resources.

Courts have held that "the FDIC may pay creditors with receiver's certificates instead of with cash."  See Meritage Homes of Nevada, Inc. v. FDIC, 753 F.3d 819, 823 (9th Cir. 2014) (quoting Battista v. FDIC, 195 F.3d 1113, 1116 (9th Cir. 1999)); see also Midlantic National Bank/North v. Federal Reserve Bank of New York, 814 F. Supp. 1195 (S.D. N.Y. 1993). Accordingly, the approval of a claim by the FDIC does not entitle the unsecured creditor of a failed bank to payment of funds.  See Regas, Frezados & Dallas LLP v. FDIC, 2011 WL 4738334, at *3 (N.D. Ill. 2011). "A receiver's certificate is considered payment in full for a general unsecured creditor of a failed bank."  Id.  The creditor may not "jump the line, recovering more than [its] pro rata share of the liquidated assets, if the financial institution's debts exceeded its assets."  Id. (quoting Battista, 195 F.3d at 1116).  Accordingly, the FDIC claims it has satisfied the Plaintiffs' request for a monetary judgment by giving them a receivership certificate.[5]

_____

[5]Counsel stated at the hearing that if the Court were to order a judgment of $101,000, the FDIC would satisfy that by giving the Plaintiffs the same

Counsel for the FDIC compared its role to that of a bankruptcy trustee. The FDIC must treat all unsecured creditors the same in approving any valid obligations or approved claims pursuant to the prior scheme that is established under the FIRREA. Counsel stated there must be an orderly administration of claims and the FDIC cannot allow a creditor such as the Plaintiffs to "jump the line."

The text of § 1821(d)(5)(A), which states that the FDIC "shall determine whether to allow or disallow" the claim within 180 days, might appear to suggest that the FDIC lacks the authority to allow a claim after 287 days, as occurred in this case. However, the FDIC made a determination to disallow the claim on March 13, 2015–within the required 180-day period–before reversing the decision and allowing the claim. The statute does not prohibit the FDIC to revisit the decision.[6] The Court has

_____

receivership certificate.

[6]Counsel for the FDIC explained that an initial decision was made by one group at the FDIC and that decision was reviewed by another group. Ultimately, the FDIC considers factors such as the overall benefit and obligations of the receivership and balancing the requested relief with the detriment to the receivership from continuing to litigate.

12

found no statutory language or any other authority which limits the jurisdiction or authority of the FDIC from reconsidering a timely determination after the 180-day period has expired.

Although it understands the Plaintiffs' frustration with this procedural posture, the Court cannot create its own limitation on the FDIC's authority to act. Regardless of the FDIC's motives in first denying and then allowing the Plaintiffs' claim, the Court has no basis to conclude that the FDIC lacked the jurisdiction or authority to proceed in that manner.

The Court further concludes that a receivership certificate constitutes payment.

## III.

Additionally, the Plaintiffs allege Great Southern Bank is subject to the Turnover Order and Show Cause Order because on August 15, 2014, it entered its appearance as Assignee for Party in Interest Valley Bank, see Doc. No. 105; and on September 19, 2014, the Court granted the Plaintiffs' Motion to Substitute Great Southern Bank for Valley Bank. The "assignee stands in the shoes of the assignor and assumes the same rights,

title and interest possessed by the assignor." Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 864 (7th Cir. 1997). Accordingly, the Plaintiffs contend that by entering its appearance as assignee, Great Southern acknowledged it was receiving the same rights, title and interests as Valley Bank, in addition to the related burdens.

Based on the foregoing, the Plaintiffs claim that Great Southern is liable for the amount awarded to the Plaintiffs in the Turnover Order of July 10, 2014. The Plaintiffs further contend no hearing is necessary and Great Southern should be held in contempt for its failure to comply with the Turnover Order.

Great Southern Bank filed a Sur-reply. See Doc. No. 151. Great Southern contends that Plaintiffs on July 31, 2014 were notified that any claim relating to Valley Bank had to be submitted as part of the receivership claim process. Moreover, the FDIC has reiterated that it retained any Valley Bank liability arising under the Turnover Order. Great Southern further disputes that by appearing in this case as an "Assignee" of certain unspecified Valley Bank assets, it incurred liability under the

14

Turnover Order.

The Purchase and Assumption Agreement entered in to by the FDIC, as Receiver of Valley Bank, with Great Southern Bank is dated June 20, 2014–several weeks before Great Southern Bank entered its appearance as assignee for Valley Bank.  See Doc. No. 141-1.  This agreement notes certain assets and certain liabilities that were transferred to Great Southern. Section 2.1 lists the liabilities of Valley Bank that were to be assumed by Great Southern.  There are approximately 15 enumerated areas of liability that were transferred to Great Southern.  None of those categories include the type of liability which Valley Bank incurred to the Plaintiffs.  "Absent an express transfer of liability by the [receiver] and an express assumption of liability by [the bank], FIRREA directs that [the receiver] is the proper successor to the liability at issue here."  Payne v. Security Sav. & Loan Ass'n, F.A., 924 F.2d 109, 111 (7th Cir. 1991).  Because there is no express assumption of liability by Great Southern in the Purchase and Assumption Agreement, therefore, the Court concludes that the liability that is the subject of the Turnover Order has been transferred to the FDIC where it

15

remains.

Additionally, Great Southern alleges that because the FDIC has issued a notice of allowance for the administrative claim that Plaintiffs submitted, the Plaintiffs have received all the relief to which they could be entitled under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. Great Southern disputes the Plaintiffs' contention that the notice issued more than 180 days after the submission of the claim is late.

As the Court earlier noted, a receiver's certificate is a proper form of payment. Although it initially had significant concerns about the FDIC's procedures and the timeline followed in this case, the Court is unaware of any authority which would prohibit the FDIC from allowing a claim such as the Plaintiffs after the 180-day period, following an initial and timely denial of the claim. Because the FDIC may satisfy creditors with a receiver's certificate, the Court must conclude that the Plaintiffs have received all that they are entitled to under the FIRREA statute. Another monetary judgment in the amount of the receiver's certificate would result in a double recovery. The FIRREA contains a statutory process that must

3:08-cv-03065-RM-BGC  # 160   Page 17 of 19

be followed in determining the priority of payment. Because its authority is limited by statute, the Court cannot order that the Plaintiffs be given preference over another creditor. See 12 U.S.C. § 1821(j).

Because the Plaintiffs have received that to which they are entitled, the Court cannot permit the entry of the alternative remedy sought by the Plaintiffs, directing the FDIC to turnover $106,000.00. Accordingly, the Plaintiffs' motion for turnover will be denied.

Additionally, although Great Southern Bank was substituted as a party for Valley Bank, it retained no liability relevant to this proceeding under the Purchase and Assumption Agreement with the FDIC. That agreement provides what liabilities Great Southern assumed from Valley Bank. The FDIC retained any liability relevant to the Plaintiffs' claim against Valley Bank. Because the FDIC did not expressly provide that the liability transferred to Great Southern, the Court cannot order that the liability under the FIRREA transferred. See Payne, 924 F.2d at 111-12. Because Great Southern was not subject to the turnover order, the Court concludes it has not violated an unambiguous command of the Court.

Accordingly, the Plaintiffs' motion for an Order to Show Cause against Great Southern Bank will be denied.[7]

The Plaintiffs also moved to dismiss the FDIC's counter-petition for declaratory relief pursuant to Rule 12(b)(6). The counter-petition seeks declaratory judgment against the Plaintiffs (and Great Southern Bank) in five counts that allege: (1) Great Southern assumed no liability to the Plaintiffs through the Purchase and Assumption Agreement; (2) the Court's Turnover Order has been satisfied; (3) the Plaintiffs have released their claims; (4) the Plaintiffs cannot obtain unjust enrichment; and (5) the Court has no jurisdiction to allow execution on assets of the FDIC.

For the reasons stated in this Order, the Plaintiffs' motion to dismiss the FDIC's counter-petition will be denied.

## IV.

Under the FIRREA, the FDIC seeks to resolve claims against failed banks and essentially minimize any further damage. The FDIC sought to accomplish that in this case by assuming Valley Bank's liability and

---

[7]As previously discussed, the Plaintiffs' request is also moot because the receiver's certificate satisfies their claim and grants them all available relief.

18

providing a receivership certificate in the amount of $101,000.  Based on its agreement with the FDIC, Great Southern Bank did not retain any liability relevant to this case.

For the reasons discussed herein, the Court concludes that these procedures complied with the FIRREA and the relevant case law.

<u>Ergo</u>, the Plaintiffs' Motion for Turnover against the FDIC [d/e 132-2] is DENIED.

The Plaintiffs' Motion for Order to Show Cause against Great Southern Bank [d/e 137] is DENIED.

The Plaintiffs' Motion to Dismiss the FDIC's Counter-petition for failure to state a claim for declaratory relief [d/e 156] is DENIED.

ENTER: December 20, 2016

FOR THE COURT:

/s/ Richard Mills
Richard Mills
United States District Judge

19